Good morning. My name is Richard Levine. I'm here representing defendant appellant Natalio Fridman. This case involves the application of the Fifth Amendment privilege or more specifically exceptions to the Fifth Amendment privilege with respect to documents and other requests in two summonses. One issue to Mr. Fridman in his individual capacity and one in his capacity as trustee of the David Marcello Trust. I'd like to address first the issue involving the so-called collective entity doctrine because it's a case of first impression in this circuit. That doctrine basically says that because the Fifth Amendment privilege is a privilege directed to individuals and not to entities that a corporation, a union, similar business entity cannot invoke the Fifth Amendment privilege with respect to documents or any other Fifth Amendment privilege and therefore an officer of that such an entity cannot invoke a privilege with respect to the entity's documents. The issue in this case is whether a... Is there any circuit split on that issue? There's no circuit split on that issue, but the Supreme Court recently said in a unanimous opinion issued in the Merrick Hold Realty Trust cited in our brief. Now the case had nothing to do with Fifth Amendment privilege. It had to do with jurisdiction and the court was making a distinction between, I think it was a real estate investment trust in that case and a traditional trust and the court was making the point that just because the name trust is in the title of the entity or the... We'll call it an entity, doesn't mean that every such... I'll use the word entity but it's not an entity concept here, is the same and specifically the court said that a traditional trust and I want to point out that the David Marcello Trust was created by an individual, Golda Kippersmith back in 1990 under the laws of the state of New York. The trust instrument specifies that the laws of the state of New York govern and it's a traditional trust. Golda Kippersmith set up a trust. She is a beneficiary for a lifetime and part of the trust and the other beneficiaries are her son-in-law and her grandson. It's a case about diversity jurisdiction, isn't it? Yes, that case was about diversity jurisdiction. Anything closer to the substantive issue of self-incrimination? The only cases that dealt with... The only case that we found, circuit court cases, one dating from 1981 which is a case involving a Missouri trust and the court said in the 8th Circuit case in 1981, cited in our brief, the court said that under Missouri law, a trust is a legally separate entity, didn't have any other issue with the 5th Circuit case in 1982 which simply said without analysis that a trust is an artificial entity. And the third case involving this issue is a 1992 case in Massachusetts which involved a Massachusetts nominee trust, not necessarily a traditional trust. Now under New York law, a trust is not an entity. Under New York law, if you want to sue with respect to a trust, you need to sue the trustee. Under New York law, if a trust has a claim, it's the trustee that has to sue. The trust is not recognized as a separate legal entity. Do some states recognize this trust as a separate entity? I don't know the laws of all the states, Your Honor. I only know the laws of New York state. The right to invoke the Fifth Amendment privilege against self-incrimination should depend on the vagaries of state laws? Well, it very well may be that you should depend on state law because the issue has to do with whether or not it's a quote, collective entity, and whether or not the entity has an identity separate from the trustee. The Supreme Court in AmeriCorps, now it's clearly dicta in that case and certainly it's dicta as it might apply to a Fifth Amendment claim. But the Supreme Court pointed out that a traditional trust is not a separate, distinct legal entity. It's a fiduciary relationship. Can I ask you about some of the procedural questions, though? Yes. The cases seem to say that you're supposed to do a document-by-document review if it's compelled disclosure. That is the basis of the Fifth Amendment claim. There wasn't any such review here, right? Well, I think the cases, Your Honor, would say that when you have specific requests for 21 different requests, of which I think 14 are still an issue, that those are specific requests, it's like a specific question. And you invoke the privilege with respect to that group of documents, all records relating to such and such. And the government's position is that all of these specific requests are important because they're looking to show that- I don't know the relevance issue, but usually you see the district court looking at the specific requests, giving you a chance to tell the court why, for that request, compelled production would involve the Fifth Amendment. I didn't see any of that here. There was just a form order that was prepared by the government that was presented to the district court. And there's not even a transcript of the hearing, the petition, right? Correct, Your Honor. So my question is, did you ever say, wait a second, Your Honor, you're supposed to look at each category and give me a chance, maybe in camera, to tell you why production of that would involve the Fifth Amendment? Did you ever raise that with the district court? Well, in our brief memorandum of law to the district court, we were very clear about why there was a Fifth Amendment privilege with respect to each category of document. The judge in that case ruled from the bench. He just ruled- We have no record of the hearing. Did you say, Your Honor, you just can't sign off on the government's proposed order. We've got to look at each of these categories. What happened at that hearing? Well, I and Ms. Jude argued before Judge Marrero. We didn't know that he was not going to have a transcript of the argument. And he ruled from the bench. I would say that he had written- You're supposed to assess your objection on appeal. I suppose the answer is you could determine from the record yourselves, or remain in the case with instructions to make it clear. So we should be the district court and look at every document and figure out what, for example, particular doctrine applies to each one of the documents. That's what you're asking us to do. Is that what you're asking us to do? Either that or remain the case for further analysis by the district judge who didn't do any analysis. He made a broad statement with regard to, well, one of these doctrines applies to these documents, end of story. I would say that none of the doctrines, collected entity, foregone conclusion. Required records. Required records, and the blanket assertion. No blanket assertion. It would be very clear in the briefs we filed, a document by document, or category by category, as to why there was a Fifth Amendment privilege. By the way, Your Honor, I think that in-camera inspection- So just to pick up on Judge Droney's questions, what's wrong as a policy matter with requiring a document by document invocation of the active production privilege? Well, I think that we comply with that, Your Honor, by going through each of the items in the request and explaining why the Fifth Amendment privilege applied. Specific document by document is very difficult, Your Honor, because the active production privilege deals with whether there's a privilege in the act of producing it. Not the document itself. So an in-camera inspection of the document is not going to reveal anything about whether or not there's a privilege in producing it, not the contents of the document. The courts are clear that- You could go into an ex-parte in-camera proceeding and say that this is why that particular request would create a problem, right? It doesn't make- You could do an ex-parte filing, saying as to category number four, this is why we think compelled production invokes my client's Fifth Amendment privilege. Well, Your Honor, I think we didn't need to do that because we explained in our brief why the Fifth Amendment privilege would apply. Various crimes that the government is theoretically investigating for, unreported income, false returns. Are you satisfied with the procedures the district court utilized here? I'm not satisfied with his lack of analysis, Your Honor. So what you're really looking for, I take it, ultimately is a, well, you'd love us to just reverse. But what you're essentially looking for is a remand. If we agree with your argument about the, on the blanket invocation issue, a remand for an actual analysis of each request and whether that request is subject to the foregone conclusion analysis and so on. That's what you're looking for. Yes, Your Honor. Okay. I see my time is up. You've reserved two minutes for rebuttal. Yes. Ms. Jude. May it please the court, Jennifer Jude for the United States. Your Honor, the district court's order enforcing the IRS's summonses should be affirmed because the government met its minimal burden to show the potential relevance of all the documents that are requested. And because Mr. Friedman is not entitled to the Fifth Amendment act of production privilege. I'm going to turn first to the issue of Mr. Friedman's blanket invocation of that privilege. It's the taxpayer's burden to establish the act of production privilege with respect to each document. So the Ninth Circuit in U.S. v. Bright talks about some of the policies in connection with not requiring a document by document invocation of the privilege for documents, right? Yes. Testimony might be one thing, documents might be another thing, because a judge can see what the document request is. Can you address that? Yes, the Bright decision made a distinction between oral testimony, which is a moving thing in progress, and document requests, which are static and as a result can be analyzed. However, Judge Polly in the Jen Drew decision discussed the Bright decision and noted that where it's not readily apparent from the document request whether all of the documents responsive to that request would be privileged, you need to look further than just the document requests. And that's the case here. You cannot tell from the face of these document requests whether all documents that are responsive, the act of producing would trigger or affect self-incrimination. And as a result, you can, on a document request by document request basis, determine that all responsive documents are privileged, you need to look further. And it's not the contents of the documents that are privileged, it's the act of producing them. If the categories is enough, and there seems to have been that record here, would the district court, would the respondent respond to each of your requests? Each has a response. Where's the district court's record if I looked at the categories and as to request number four, I find this, or six. Even if you don't need more than just the categories of the documents, where's the record that the district court did that? Well, the record that the government would like to point this court to is the briefing and the interview of the tax payer in which he invoked the privilege in a blanket fashion. So the specific part of Judge Morero's order where he, having list- The objection was a nine page objection, right? That's right, the objection to the petition, and then there was also a reply brief that followed up on that. So when did the district court say, okay, as to number four, I rule X, this exception doesn't apply or does apply, or where's that? The district court didn't do that because it found that that objection to the petition was itself insufficient. There's no indication that Mr. Freeman actually collected any of these documents and reviewed them to determine that the act of producing them would be incriminatory. In fact, the government and Mr. Freeman, after the notice of appeal in this case was filed, entered into a stipulation which is on the district court's record that Mr. Freeman would, now that this appeal is pending, gather all those documents, presumably for the first time. Is there a rule that the tax payer in this case has got to affirmatively represent that he or she or it, or he or she, has reviewed all the documents before invoking the Fifth Amendment? I'm not aware of a specific rule, but I think it's implicit in the fact that, as countless courts have said, you have to make your invocation of this privilege on a document-by-document basis. You can't possibly do that if you haven't looked at the documents and determined whether there are- Well, if we were to agree with the Bright analysis, could you prevail on this issue? The Bright analysis specifically- The Ninth Circuit analysis. Well, Your Honor, I don't believe that Bright addressed this particular issue. It made a sort of higher level distinction between oral testimony and documents. But with respect to these particular documents, an issue in this case, I don't believe Bright applies because in the required records, exception is a perfect example, there are documents that are responsive to some of the government's requests. The act of producing of which is not incriminatory because they're required records. And some documents in response to request number three and four, for example, might be privileged because they might contain incriminating information and not be required records, but- That's why the blanket invocation becomes problematic. Different doctrines may apply or not. That's correct. That's correct, and Mr. Friedman simply failed to carry that burden. And on the record of that failure alone, this court could affirm. So I'll move next to the- But there are specific points raised in this document that was filed, the objection, right? Yeah, well, yes, so there's three- One, dating back to 1999 are not relevant because it's only the 2008 tax year. Yes, Your Honor, however, that speaks to- Account opening information is not relevant to the 2008 tax year. So there were some specifics, right? There were some specifics, but the relevance of the document request does not speak to the incriminatory nature of them. So those are distinct issues. Would you like me to address the relevance issue, Your Honor? I don't think so, no. Okay, so I'll move on to the collective entity doctrine. Let me ask you one more question about the foregone conclusion doctrine. Does the district court's decision here, excuse me, comport with our decision in Greenfield? It does. Which was decided after. It does, Your Honor. So the Greenfield decision, cited with approval, the two cases that the government relies on the most for its foregone conclusion exception argument, and that's Bright and Norwood. And this is a very similar case. It's a straightforward application of the foregone conclusion doctrine to requests for bank records from banks that the government knows Mr. Freeman controls. And it knows specifically which bank it's at, that bank name, but also the account number. And so those are the exact facts in Bright and Norwood. We're not looking for more exotic documents. These are customary bank documents. Mr- With all of the relevant identifying information. With all of the, yes, with all of the identifying information. And the- Could you get them from the banks? We could get them from the banks, but we're not required to get them from the banks, Your Honor. That's another avenue. However, the IRS, with limited resources, should be and is entitled under 7602 to go directly to the source and get all the documents at once rather than expending more resources going around to all of the banks and collecting the documents. So to return to your question, the 28J letter that Mr. The Greenfield case that were never raised previously before the district court, the government considers those arguments to be waived. But the government can also address them, and it believes that Greenfield is distinguishable from the instant case. And the two arguments are with respect to authentication. Again, there's no record on authentication because Mr. Freedman never raised the authentication issue before the district court. However, there are many potential avenues for authenticating these documents. They're all third party documents, which is not the case in the Greenfield decision. The documents there were included memos that belonged to the taxpayer that related to the entities at issue. Here, they're only third party documents, and as a result, they can be authenticated by bank employees. They can also be potentially authenticated under the Hague Evidence Convention. And all but one of the bank nations where these bank accounts are are parties to the Hague Convention. They also can potentially be authenticated under Federal Rule of Evidence 901B4 by comparing them to other bank documents. And the government has put in evidence in the Kobayashi Declaration as attachments that it has many bank documents already from some of these same bank accounts, and so it can compare the documents that it receives to those to authenticate them. There are various avenues for it. That's correct, and with respect to the temporality argument, also this issue was not raised. But unlike in Greenfield, there's no showing that has been made by the taxpayer that producing documents in 2014 in the date of the summons would add additional incriminating information that the government does not already have. In the Greenfield case, because there was an issue related to the taxpayer's father. Is it a taxpayer or is it the taxpayer's father who controlled this entity? And the fact that the taxpayer continued to have the documents and produced them in 2014 could show that he was the actual mastermind behind the entities. There's no issue like that here. There's no issue like that here, and as a result, that's distinguishable. These are bank accounts that the government knows are in Mr. Friedman's name. It has a lot of information from tax year 2008, FBARs in 2008 that were filed, as well as some bank account statements from 2008. And for one of the accounts, the HSBC account in the name of the trust, it has a bank account statement through 2010 in the Norwood decision. Of course, part of the problem is that if we were to disagree with you as to the blanket invocation argument. Then it seems to me that we're, well, we seem to be required to go through document by document. What doctrine applies to each document? Am I wrong about that? Because what your adversary is asking for is just, if we get past this first issue, then remand and let the district court do the job. Well, there's a remarkable amount of agreement in the briefs as to which document requests are at issue. The government has laid out, as it did in its briefs before the district court and in oral argument, which unfortunately was not recorded. And in its appellate briefs, that it's only seeking to apply certain exceptions to certain document requests. It's not seeking to apply all exceptions to all document requests. And I believe that we understand each other as to which ones the government is seeking to apply which exceptions to. So- Can I just ask, why wasn't there a court report? I mean, were you in a district court courtroom when this went out? We were, and I was under the impression that it was being recorded. I found out that it wasn't when I tried to order the transcript for the first time. How long was the hearing? You were in part one. And the hearing was, I would say, approximately an hour. And the judge did rule from the bench and he said more than- Did he sign? Didn't you prepare the order? Did prepare the order. He said- Did he make any changes to it? He did not make any changes to it. Yeah. I can address any of the other issues, but I see that my time is up. Thank you very much. Mr. Levine. I think the court should understand that the idea, as Ms. Jude mentioned, incriminating information in the documents. The documents, the fact that whether or not there's incriminating evidence in the documents, information in the documents, irrelevant to the Fifth Amendment privilege. The Fifth Amendment privilege is act of producing. You're admitting that you have the documents. You're admitting that the documents are responsive to the summons. You're admitting that they're authentic. You're admitting that they exist. These are the aspects of the Fifth Amendment privilege with respect to document production. So in camera review, to me, doesn't make a lot of sense for this court or for a district court judge. I also want to point out that if the court, if your honors, look at the specific documents requested, you'll understand why this is completely unlike a specific document request. Item number one, for all foreign bank accounts over which you have signatory authority from 1999, which is ten years before the year in issue, please list the opening and closing date of each. First of all, there's no specificity for everything. You tell us what you have. That's really testimonial. It's not even document production. But you don't want any camera review, huh? I don't think that camera review is relevant. I think maybe you should explain, if necessary, although I don't think it's fair to a defendant, to say, to require him to tell the judge, your honor, this is the particular crime I'm particularly concerned about. The government is saying it's investigating tax fraud, unreported income, false return, hiding income, offshore accounts. They're investigating that. And in the affidavit of Mr. Kobayashi, a revenue agent, which by the way was filed a year and a half after the summons was issued, explains the relevance of each of these document requests and say it's relevant to our investigation of tax fraud, unreported income, false return. So the government's telling us why it's relevant. So my client's supposed to reduce these documents. And by the way, he's supposed to go out and find them if he doesn't have them, so that when he produces them, he's sort of admitting that he had them, while he didn't really have them. He never had them. Well, I'm not saying that applies to everything, but the point is that if you read these documents, these requests, on their face, on their face, it's clear that- So your adversary, I think, was arguing that the document request has a sufficient level of generality, that you need to more specifically invoke the privilege as to documents that might be encompassed by the request. What's your answer to that? My answer is that I don't have to do it document by document, specific by specific, because the request itself, or first of all, the idea that lists the opening and closing date. That's not a document, that's testimony. That's a request for testimony. And there are similar ones throughout this summons. Please describe the flow of funds. Please explain this or that. Where's the describe the flow of funds? Request number seven, your honor. All requests that show the flow of funds. So you're asking the defendant to select documents that show what the government wants to show. But it's not his testimony, it's the documents which show the flow of funds, right? It's the canceled checks, transfer instructions, wire transfer slips, deposit slips to show the flow of following funds. Well, the United States Supreme Court in Hubble, your honor, said that the government couldn't use the documents, 13,000 documents that were produced under compulsion. Because Mr. Hubble was basically using his own intellect to decide what was relevant and what was called for. And that was a violation of his Fifth Amendment. Did you make that argument to the district court? Well, we made the argument that this is essentially asking for testimony. We made that argument. We had a long hearing, over an hour I would say. And judge had rule from the bench. He didn't do any analysis. And by the way, the government is trying to have it both ways. First it has an affidavit saying that all of these are relevant for its investigation of tax crimes and tax fraud. They're all relevant for that purpose, but we need to show why they might be a Fifth Amendment privilege. They're all relevant to their investigation. If they're not relevant, then they shouldn't be requested. We don't have to worry about Fifth Amendment privilege. If they are relevant, which they claim covers all of these, based on the affidavit of the revenue agent, then Fifth Amendment privilege should be a foregone conclusion, to coin a phrase. Also, the whole foregone conclusion doctrine with respect to all, your honor, Judge Loyer knows what Greenfield says better than anyone in this courtroom. And when you list all foreign bank accounts- Okay, well- Thank you very much. Yeah, thank you, yeah. We'll argue and we'll reserve decision.